

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

May 19, 1947

Honorable William N. Hensley
Criminal District Attorney
Bexar County
San Antonio, Texas

Opinion No. V-203

Re: Whether a private club,
under certain prescribed
conditions, would be op-
erating in violation of
constitutional and stat-
utory provisions relative
to the sale of liquor by
the drink; clarification
of previous opinion No.
0-7139, pertaining there-
to.

Dear Sir:

Your letter of March 20, 1947, requesting the
opinion of this department as to the effect to be accord-
ed previous Opinion No. 0-7139, relative to the sale of
liquor in a private club, reads in part as follows:

"We hereby request that your office furnish us
with an opinion as to whether or not you adopt or
reject Opinion No. 0-7139, approved by your prede-
cessor on December 20, 1946.

"Your predecessor delivered two contrary opin-
ions on the matter involved, the above captioned
opinion being the last one rendered. For that rea-
son, we think it highly advisable to have the doubt
thus raised resolved by you after a re-examination
and re-consideration of this matter.

"In the event that you adopt this opinion, we
would greatly appreciate it if you would further
clarify same. This opinion did not decide whether
or not the fact situation presented constituted
a violation of the law, but merely stated that
such evidence would make a prima facie case to
present to a jury. A more definite and positive

opinion would be of great benefit to both this
office and the local office of the Texas Liquor
Control Board in deciding what course of action
to take with respect to the San Antonio Club,
whose operations constitute the subject matter
of the previous opinions and of this request.
. . . . "

It is an extremely difficult task for this off-
ice to attempt to pass on the application of a statutory
provision to a given situation which is based upon ques-
tions of fact. Such questions of fact are to be deter-
mined by a jury, or by the court in absence of a jury,
and this may be subject to one construction by a given
jury panel and to an entirely different interpretation
by another, depending upon the credibility and weight
placed upon the witnesses and their testimony, circum-
stantial evidence and other matters which cause the
minds of reasonable men to differ. As you stated in
your letter, the writer of Opinion No. 0-7139, which
was released on December 20, 1946, did not pass upon
the given facts as a matter of law, but only that such
evidence would make a prima facie case to present to a
jury.

In order for us to give an opinion as original-
ly requested by the Honorable Bert Ford, Administrator,
Texas Liquor Control Board, the manner in which the San
Antonio Club is operated, as set out in Opinion No. 0-
7139, will necessarily have to be assumed as the estab-
lished facts of the case. The two letters from the Hon-
orable Bert Ford are set out in full, in order that we
may have these facts before us, as follows:

"Will you please give me your valued opinion
as to whether or not a place operated in the man-
ner indicated below, where alcoholic beverages a re
served, constitute the operation of an open saloon.

"The San Antonio Club, a corporation duly in-
corporated under the laws of the State of Texas,
is the lessee of approximately 1800 square feet of
space located on the third floor of the Gunter Hotel.

"This space was leased to the San Antonio
Club for a period of five years at an annual
rental of $5,000.00 per year. The premises were
leased for occupancy as a private club and the

lessee agreed to all public laws pertaining to the operation of private clubs.

"The club comprises three rooms: a reading room, a club room, and a dining room. The club is staffed with stewards who are responsible for the general upkeep of the club; and these two stewards are hired by and their salaries are paid by the San Antonio Club. Officers of the club and members of the club do not receive any compensation.

"The Gunter Hotel services the dining room and maintains waiters for both the luncheon and dinner.

"The club members pay the hotel regular room service prices, less ten per cent discount for food.

"The hotel waiters do not have access to the club room, or the reading room. Their activities being confined strictly to the dining room.

"There is a service bar in the club room for dispensing mixed drinks only to members and their guests.

"The bar is operated under what is known as the bar pool plan. Each of the seventy-five club members have on deposit in a separate fund $25.00 each, which makes a total of $1875.00. This money has been pooled together to purchase liquor for their personal use.

"Purchases of liquor for the club is made by the treasurer from the holder of A Retail Package Store Permit.

"In withdrawing liquor at the bar from this pool, each member uses a coupon book. Each coupon entitles the member to one drink.

"All liquor purchased for the club is placed on the back bar or is stored in a small room behind the bar.

"Club members obtain coupon books from the stewards.

"At the end of each month the club member is billed for the number of coupon books he has been issued.

"There are no guest cards for the San Antonio Club, and no non-member is allowed in the club room unless he is a guest of a member. No guest can obtain drinks from the bar, but a member may serve his or her guest a drink, using his or her coupon. No money at any time changes hands in the club room.

"Following are the house rules of the club.

"1.   No ladies permitted before 5 p.m.

"2.   No unescorted ladies permitted at any time.

"3.   Members required to limit their guests to four -- if more, contact the bar regarding service before arriving with the guests.

"4.   No gambling with guests at any time.

"5.   No poker allowed.

"6.   Club open from 11 a. m. to 12 midnight.

"7.   No slot machines or nickelodeons permitted on the premises.

"8.   No long distance phone calls or wires permitted from house phones.

"9.   No members or guests allowed behind the bar.

"10.  Members cannot mix their own drinks.

"11.  No member shall be permitted the privilege of bringing the same resident guest oftener than once a week.

"12.  Drinks cannot be served to anyone other than a member, unless accompanied by a member.

"13.  Members are not permitted to bring their own liquor.

"I wish to call to your attention the follow-
ing provisions of the Texas Liquor Control Act:

"'Section 3,(a) of Article I.  The term "open
saloon" as used in this Act, means any place where
any alcoholic beverage whatever, manufactured in
whole or in part by means of the process of distil-
lation, or any liquor composed or compounded in part
of distilled spirits, is sold or offered for sale
for beverage purposes by the drink or in broken or
unsealed containers, or any place where any such
liquors are sold or offered for sale for human con-
sumption on the premises where sold.'

"'Section 3(b) of Article I.  It shall be un-
lawful for any person, whether as principal, agent
or employee, to operate or assist in operating, or
to be directly or indirectly interested in the oper-
ation of any open saloon in this State.'

"I also wish to call your attention to Opinion
No. O-1145, approved by the Attorney General's De-
partment on August 26, 1939.  It is the contention
of the San Antonio Club that Attorney General's O-
pinion No. O-1145 does not cover this situation. The
San Antonio Club further contends that the manner
in which it operates does not violate Section 3,
(a) of Article I."

* * * * * *

"In supplementing my letter of March 7, 1946,
requesting an opinion on the operation of the San
Antonio Club, a corporation duly incorporated under
the laws of the State of Texas, this club oper-
ates on a coupon system whereby a member may secure
a coupon book containing twenty (20) coupons, of
which each coupon is worth fifty cents($.50) each
making the coupon book cost a total of $10.00.

"In each instance of where a member pur-
chases a drink of whiskey, mixed or otherwise,
it is necessary that the member and the club
steward countersign each coupon.  Each drink of
whiskey, either mixed or otherwise, has a cost
of fifty cents ($.50) regardless of the type
drink purchased.

"The club member does not pay for his coupon

books until the end of the month, at which time the secretary bills him for the number of coupon books that he has received during the month.

"The treasurer of the San Antonio Club purchases all liquors to be used by the club and payment for these liquors is made from the funds, which were originally set up as explained in my previous letter.

"Moneys derived from the sale of coupon books is placed in the fund at the end of each month."

It appears to us that the primary question involved in this situation is whether there is a sale from the club to the individual members when a drink of whiskey is served. The authorities discussed by the writer of Opinion No. O-7139 will be used here, in so far as they are applicable.

Krnavek v. State, 41 S. W. 612 (Court of Criminal Appeals) holds:

"The question here is whether the sale of intoxicants by the managing steward or barkeeper of the club to one of the members of said club is a sale. We are of the opinion that it is. When the intoxicants were bought by the steward, or any other member of the club, with the funds of the club, they became the property of the corporation, and a sale by the steward of said corporation to any of its members was a sale, as that term is defined. It was the separation of the property of the club, and the transfer of the same to an individual member, for which he either paid the cash, or became responsible therefor. . . . . . This is not a case where parties contribute sums of money and purchase intoxicants therewith, and divide them prorata among themselves; but it is a transaction where the common assets of a continuing business are used to replenish the goods sold in that business. . . ." (Emphasis ours.)

Feige v. State, 95 S. W. 506 (Court of Criminal Appeals), holds:

"In any event, according to our view, the

club members, when they paid their money into the treasury, parted with it to the corporation, the corporation becoming the owner thereof; and when the corporation sent out this money it bought the beer on its own behalf in Ft. Worth, and if at any time the corporation had failed and become subject to execution, the beer and property of the same could have been seized for the debts of such corporation. When the beer was brought from Ft. Worth to Cleburne, being the property of the corporation, whenever it delivered a glass of beer to any member and received therefor 5 cents, it became the vendor of such glass of beer; the title to the same was parted with by the company through its manager to the vendee, and the manager of said company made a sale to such member. . . . . ." (Emphasis ours.)

Adams v. State, 145 S. W. 940 (Court of Criminal Appeals), holds:

"The questions presented for our consideration are but two: Did the transaction constitute a sale within the meaning of our laws, and, . . . The evidence shows that the incorporated club purchased liquors in bulk with money in the treasury, and sold or dispensed the liquors to its members at the usual or customary price. This we think constitutes a sale under all the rules of law. If any given number of persons organize an association under any name whatsoever with the understanding and agreement that such goods are to be dispensed to the members in such quantities as each may desire at the usual and customary price, the member paying only for such quantity as he receives, such transaction constitutes a sale by the association to the member." (Emphasis ours.)

From the authorities cited, supra, and many other authorities found by a careful search in connection with the questions involved in this request, we are of the opinion that under the facts which, as stated at the outset, we are necessarily assuming to be established, there is a "sale" of whiskey from the club or steward as agent for the club to the members. The facts stated in the cited cases are not dissimilar to the facts involved in the operation of the San Antonio Club as set out in the letters from the Honorable Bert Ford. Under such holdings, the manner in which the San Antonio Club is being conducted

is clearly in violation of Article 666-3, Paragraph (a) of Vernon's Penal Code of Texas. The money which each member places in the "pool", becomes the common property of the club, and the liquor purchased by the treasurer with this money becomes the property of the club. Therefore, when a drink is served to an individual member and he becomes liable for the "coupon" given for such drink, it is a "sale" of the property of the club to the member. We concede that the members of the San Antonio Club do not have the intention or disposition to violate the provisions of the Texas Liquor Control Act, but, in view of the authorities relative to what constitutes a sale in such cases, we are bound to hold that such conduct does amount to a violation of the hereinabove mentioned provisions of the Penal Code.

Upon determining that a "sale" is made by the Club or by the steward, as agent for the club, to the members, the next question involved is whether such a sale under Article 666-3, Paragraph (a), Vernon's Penal Code of Texas, would be prohibited in a "wet" area as well as in a "dry" area, inasmuch as the violations in the cited cases occurred in a "dry" area. This is specifically passed on by the Court of Criminal Appeals in Shelton v. State, 138 S. W. (2d) 1078, in the following language:

"This is a case of first impression where we are asked to determine whether or not the law forbidding an 'open saloon' applies to the 'wet' or to the 'dry' territory within the state. It is our view that the law prohibits an open saloon within the state without reference to other conditions, and that the operation of an open saloon, as defined by statute, is a violation of the law wherever situated." (Emphasis ours.)

We wish to point out that the method of operation involved here is to be distinguished from the one, which we are informed, is being used at the Houston Club in Houston, Texas, and other clubs over the State, where individual lockers are provided for the members of the club. In those situations, there would not be a sale of liquor as there the individual would be providing his own liquor, and it would not be purchased by the treasurer out of funds belonging to the club thereby becoming the property of the club.

This opinion is not to be construed as over-ruling former Opinion No. O-7139, but only that such opinion is qualified by our taking various conditions as established rather than leaving them for determination by a jury.

## SUMMARY

If an officer of a private club purchases liquor from funds furnished by individual members to the club, such liquor becomes the common property of the club. When a drink is delivered by the steward to a member, and is paid for in the manner provided by the club, it constitutes a "sale" by the club to the individual member. (Krnavek v. State, 41 S. W. 612; Feige v. State, 95 S. W. 506; Adams v. State, 145 S.W. 940.) Such a sale is in direct violation of the provisions of Article 666-3, Paragraph (a), Vernon's Penal Code of Texas. This statutory prohibition applies equally to "wet" areas and "dry" areas. (Shelton v. State, 138 S. W. (2d) 1078.)

Yours very truly

ATTORNEY GENERAL OF TEXAS

By  William S. Lott
William S. Lott
Assistant

APPROVED MAY 21, 1947

ATTORNEY GENERAL

WSL:rt:jrb